## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STANLEY N. OZOROSKI,** | : | **CIVIL ACTION NO. 1:08-CV-0082** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DR. FREDERICK R. MAUE, DR.** | : | |
| **JOHN S. REIDELL, WEXFORD** | : | |
| **HEALTH SOURCES, INC., DR.** | : | |
| **DAVID E. ROWE, PRISON HEALTH** | : | |
| **SERVICES, INC., DR. ADAM A.** | : | |
| **EDELMAN, MARVA CERULLO,** | : | |
| **CECILIA VELASQUEZ, CHERYL** | : | |
| **CANTEY, and GAUDENZIA, D.R.C.,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Stanley Ozoroski brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging that he was denied access to adequate medical treatment during his incarceration at the Rockview and Mahoney state correctional facilities, as well as a drug rehabilitation center in Philadelphia.  Among defendants are state officials, private health care providers, physicians, and mental health professionals. Defendants have collectively filed four motions to dismiss the complaint on various procedural and substantive grounds.  (Docs. 33, 35, 37, 47)  For the reasons that follow, the motions will be granted in part and denied in part, and Ozoroski will be permitted to file an amended complaint against a limited number of defendants.

**I.    Statement of Facts**[1]

From 1993 to 2007, plaintiff Stanley Ozoroski ("Ozoroski") allegedly suffered through what can only be described as a torturous medical odyssey.  In late 1993, Ozoroski was housed as an inmate at the Pennsylvania state correctional facility at Rockview ("SCI Rockview").  (Doc. 31 ¶ 1.)  After suffering a hernia in his groin, Ozoroski underwent an exploratory laparoscopy on November 15, 1993.  The procedure was performed by defendant John Reidell[2] ("Reidell").  (Id. ¶¶ 4-5.)  During the surgery, Ozoroski's small bowel was perforated; Reidell attempted to surgically repair the damage, but his effort was purportedly unsuccessful.  (Id. ¶¶ 6, 9.)

Ozoroski alleges that he was in immense pain for months following the surgery.  He avers that the incision site was oozing "a green smelly substance."  He was eventually diagnosed with peritonitis, a staphylococcal infection.  (See id. ¶¶ 10-11.)  Ozoroski complained about his condition, but was purportedly ignored by Reidell.  (See id. ¶¶ 12-13.)  On May 24, 1994, Ozoroski was taken to Centre County Hospital, where an emergency colostomy was performed.  (Id. ¶ 17.)  Two months

---

[1] In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in the complaint and in the public records provided by defendants.  See infra Part II.  The statements contained herein reflect neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the parties' allegations.

[2] The complaint identifies Reidell as a contract surgeon employed by Wexford Health Sources, Incorporated.  (See id. at 1.)  Wexford disputes this averment.  (See Doc. 34 at 10.)

later, prison physicians discovered compacted and petrified feces below Ozoroski's

colostomy site.  (Id. ¶ 18.)  On August 23, 1994, Ozoroski was transferred to Holy

Spirit Hospital, where he was subjected to invasive abdominal surgery.  (Id. ¶¶ 19-

22.)  Six additional abdominal procedures were performed between August 1994

and February 1996.  (Id. ¶ 23.)

Unfortunately, Ozoroski's medical difficulties continued.  Additional

complaints led to an examination on July 28, 1997 by Dr. Samuel Magee, a surgeon

at Blair Hospital.  Dr. Magee allegedly determined that Ozoroski's stomach and

intestines were dysfunctional and required comprehensive surgical repair.  (Id.

¶¶ 25-26.)  Further review in October 1997 by Dr. Aaron Blazak, a surgeon at

Geisinger Hospital, resulted in Blazak's offer to surgically correct Ozoroski's

condition "with no complications."  (Id. ¶ 27.)  However, consistent with contractual

arrangements, surgery required authorization by defendant Wexford Health

Sources, Incorporated ("Wexford").[3]  Wexford refused to authorize payment for the

procedure.  (Id. ¶ 31.)  Dr. Blazak reexamined Ozoroski on December 24, 1998,

August 23, 1999, and February 16, 2000.  (Id. ¶¶ 28-30.)  In each instance, Dr. Blazak

recommended remedial abdominal surgery; in each instance, Wexford refused to

authorize payment and the surgery was not performed.  (Id. ¶¶ 28-31.)

---

[3] Wexford is a contractor of health care services and was under contract with the Pennsylvania Department of Corrections ("DOC") to provide medical services to inmates of the state prison system.  (See id. ¶¶ 9, 31-32.)

On August 7, 2000, Ozoroski filed a formal grievance with SCI Rockview regarding Wexford's refusal to authorize surgery.  The grievance was ultimately denied on September 19, 2001.  (Id. ¶¶ 35, 39; Doc. 1, Ex. D.)  A second grievance was filed on June 10, 2001.[4]  (Doc. 31 ¶ 36.)  Ozoroski was then examined by a Wexford physician—Dr. Moyer—on August 21, 2002.  (Id. ¶ 40.)  Dr. Moyer purportedly recommended surgery, but Wexford again refused to authorize payment.  (Id.)  This denial precipitated another grievance, which Ozoroski filed on October 28, 2002, (id. ¶ 41); the DOC subsequently rejected both the grievance and Ozoroski's appeal thereof, (id. ¶ 42; Doc. 1, Ex. F).

At some point in late 2003 or early 2004, Wexford's contractual relationship with the DOC was terminated, and defendant Prison Health Services, Incorporated ("PHS") became the DOC's contract health services provider.  (Doc. 31 ¶¶ 50-51.) Yet, little changed with respect to Ozoroski's ability to procure outside surgical services.  On November 10, 2003, defendant Dr. Frederick Maue[5] ("Maue") sent Ozoroski a letter denying a request to obtain surgery.[6]  (Id. ¶ 44.)  The following month, Ozoroski was examined by prison medical director Dr. Marsha Modery

---

[4] The complaint is unclear regarding the final outcome of this grievance. (See id. ¶ 35.)

[5] Maue is identified in Ozoroski's complaint as Chief of the Clinical Services Bureau for the DOC's Health Care Services department.  (Doc. 31 ¶ 7.)

[6] Maue delivered another letter to Ozoroski on October 20, 2004.  (Id. ¶ 65.) The letter purportedly stated that Ozoroski's condition was unchanged since November 2003 and that surgery was unnecessary.  (Id.)  It is unclear from the complaint exactly what prompted Maue to deliver these letters.

("Modery"). (Id. ¶¶ 45-46.)  Modery observed that Ozoroski was suffering from abdominal pain caused by a highly infected distended-strangulated intestine. (Id. ¶ 45.)  She ordered prison officials to transport Ozoroski to the Good Samaritan Hospital, where he was examined by the resident surgeon, Dr. Fisher. (Id. ¶ 47.) Dr. Fisher recommended surgery as expeditiously as possible. (Id.)  PHS regional director, Dr. Standish, recommended surgery as well. (Id. ¶ 51.)

Modery informed Ozoroski on March 21, 2004 that his surgery was delayed until defendant Dr. Adam Edelman ("Edelman"), director of PHS, was able to examine photographs of Ozoroski's hernia site. (Id. ¶ 52.)  PHS then denied Ozoroski's request for surgery on April 23, 2004. (Id. ¶ 56.)  A subsequent surgery request was denied by PHS on June 23, 2004. (Id. ¶ 62.)  These denials led Ozoroski to file another grievance on June 28, 2004, which led to another rejection by the DOC. (Id. ¶ 63.)  Ozoroski alleges that he appealed this rejection on July 13, 2004, but that he never received a response from the DOC. (Id.)

On September 25, 2004, Ozoroski received notification from the Veterans' Administration ("VA") that he was enrolled in its health care system and was scheduled for an appointment on December 17, 2004.[7] (Id. ¶¶ 66-67.)  Attendance at the appointment required Ozoroski to obtain permission for prerelease from prison officials. (See id. ¶ 68.)  On October 15, 2004, the prison unit manager, Ms. MacKnight, notified Ozoroski that he was ineligible for prerelease. (Id.)  When

---

[7] Ozoroski is a veteran of the United States Navy. (See id. ¶ 81.)

Ozoroski requested justification for this determination, Ms. MacKnight allegedly explained that she was under a specific order to refrain from filing an application for Ozoroski's prerelease to the VA.  This order was purportedly issued by the prison Health Care Administrator at the state correctional facility at Mahoney[8] ("SCI Mahoney"), defendant Marva Cerullo ("Cerullo").  (Id.)  Ozoroski filed another grievance on November 9, 2004; it too was rejected.  (Id. ¶ 74.)

At least three different physicians examined Ozoroski between December 9, 2004, and December 2006.  (See id. ¶¶ 78-86.)  Each physician allegedly recommended that Ozoroski receive abdominal surgery.  (See id.)  Dr. Paul Meade at Geisinger Medical Center cautioned that, without surgery, Ozoroski was unlikely to live much longer.  (Id. ¶ 84.)  Ozoroski claims that in spite of Dr. Meade's warning, he "was continually denied medical treatment for his condition . . . by the prison's contract health care providers."  (Id. ¶ 86.)  In December 2006, Ozoroski was transferred from SCI Mahoney to the Gaudenzia Drug Rehabilitation Center of Philadelphia, administered by defendant Gaudenzia, D.R.C. ("Gaudenzia").  (Id. ¶ 87.)  Dr. Kenneth Widom, also at Geisinger Medical Center, examined Ozoroski prior to his transfer and purportedly recommended surgery.  (Id.)  Dr. Widom told Ozoroski to contact him in order to schedule an operation after he was transferred to Gaudenzia.  (Id.)

---

[8] Ozoroski was transferred from SCI Rockview to SCI Mahoney in 2004.

6

Ozoroski arrived at Gaudenzia and notified his medical supervisor, Ms. Marsh, that he needed to use the telephone in order to arrange an appointment with Dr. Widom.  (Id. ¶ 88.)  According to the complaint, Ms. Marsh purportedly denied him access to a telephone.  (Id.)  Ozoroski's unit manager at Gaudenzia, Mr. Means, refused subsequent requests for a telephones.  (Id. ¶ 89.)  On January 11, 2007, Ozoroski met with an individual at Gaudenzia named Ernie Bellos ("Bellos"). After explaining that the Gaudenzia staff had denied him access to the telephones, Bellos facilitated Ozoroski's attempts to contact the VA.  (Id. ¶¶ 91-94.)  From January 2007 to October 2007, Ozoroski attended several appointments at the VA, which eventually culminated in abdominal surgery in October 2007.  (Id. ¶ 100.) The operation required the removal of 50% of Ozoroski's intestinal tract.  (Id. ¶ 101.)

On January 14, 2008, Ozoroski commenced the instant action by filing a complaint with this court.  (Doc. 1.)  Ozoroski alleges that all defendants, including three against whom the complaint lodges no factual averments,[9] collectively violated his constitutional rights by acting with deliberate indifference to his medical needs and depriving him of adequate medical care.  (See Doc. 31.)  He

---

[9] Ozoroski includes Dr. David E. Rowe ("Rowe"), Cecilia Velasquez ("Velasquez"), and Cheryl Cantey ("Cantey") as defendants in this matter. Velasquez and Cantey are executives with Gaudenzia, while Rowe is alleged to be a physician employed by Wexford.  The complaint does not specify how any of these defendants were involved in Ozoroski's treatment.

Additionally, the complaint named as a defendant Jeffrey A. Beard, the Commissioner of the Pennsylvania Department of Corrections.  (See Doc. 31 ¶ 6.) After Beard moved to dismiss the complaint, Ozoroski voluntarily dismissed him from the lawsuit.  (See Doc. 40 at 3.)

requests both equitable and monetary relief.  (Id.)  When Ozoroski prepared his

complaint, he was scheduled for transfer from Gaudenzia to the VA hospital in

Lebanon, Pennsylvania.  (Doc. 31 ¶ 151.)  After filing, however, he was allegedly

returned to SCI Mahoney, where he is currently incarcerated.  (Id.)  Ozoroski

subsequently amended his complaint in order to include allegations of retaliatory

transfer.  Defendants have filed four separate motions to dismiss on various

grounds.

## II.   __Standard of Review__

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of complaints that fail to state a claim upon which relief can be granted.

FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the

court must "accept as true all [factual] allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them in the light most

favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)

(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is

generally limited in its review to the facts contained in the complaint, it "may also

consider matters of public record, orders, exhibits attached to the complaint and

items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran &

Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory

Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the

defendant notice of what the . . . claim is and the grounds upon which it rests."

Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The plaintiff must present facts that, if

true, demonstrate a plausible right to relief.  See FED. R. CIV. P. 8(a) (stating that the

complaint should include "a short and plain statement of the claim showing that the

pleader is entitled to relief"); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege

facts sufficient to "raise a right to relief above the speculative level"); Victaulic Co.

v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007).  Thus, courts should not dismiss a

complaint for failure to state a claim if it contains "enough factual matter (taken as

true) to suggest the required element.  This does not impose a probability

requirement at the pleading stage, but instead simply calls for enough facts to raise

a reasonable expectation that discovery will reveal evidence of the necessary

element."  Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).  Under this

liberal pleading standard, courts should generally grant plaintiffs leave to amend

their claims before dismissing a complaint that is merely deficient.  See Grayson v.

Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d

113, 116-17 (3d Cir. 2000).

**III.   Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a

means to redress violations of federal law committed by state officials.  See 42

U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or

other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. Section 1983 is not a source of substantive rights, but merely a method for vindicating violations of other federal laws. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kopec v. Tate, 361 F.3d 772, 775-76 (3d Cir. 2004). To establish a claim under this section, the plaintiff must show the deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

In the action *sub judice*, Ozoroski alleges that defendants were deliberately indifferent to his serious need for abdominal surgery. He further avers that he has been repeatedly denied surgery and reasonable medical care since 1994. As a result of this deliberate indifference, Ozoroski contends that he was forced to endure excruciating pain and the eventual loss of half of his intestinal tract. Defendants have raised several defenses to Ozoroski's claims, including *inter alia* Eleventh Amendment sovereign immunity, expiration of the statute of limitations, and failure to state a claim for relief under the Eighth Amendment. *Sua sponte*, the court also recognizes deficiencies regarding the sufficiency of service. These issues are addressed *seriatim*.

## A.     Eleventh Amendment Immunity

Ozoroski brings Eighth Amendment claims against both Maue and Cerullo as state officials acting in their official capacity.  Maue is chief of the Clinical Services Bureau for the DOC's Health Care Services department; Cerullo is the health care administrator at SCI Mahoney.  (Doc. 31 ¶¶ 7, 13.)  Ozoroski's official capacity claims are barred by the Eleventh Amendment, which precludes private federal litigation against a state and its agencies.[10]  Hans v. Louisiana, 134 U.S. 1, 15-16 (1890); see also Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000); Lombardo v. Pennsylvania, 540 F.3d 190, 194-95 (3d Cir. 2008).  For purposes of the Eleventh Amendment, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."[11]  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  Therefore, Ozoroski's official capacity claims represent nothing more than an attempt to bring suit against agencies of the

---

[10] The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

[11] The court is aware that Ozoroski's complaint seeks both retrospective and injunctive relief.  The official capacity claims seeking retrospective relief are barred by the Eleventh Amendment, "but the amendment does not bar a suit seeking declaratory or injunctive relief against [state] officials."  Laskaris v. Thornburgh, 661 F.2d 23, 26 (3d Cir. 1981).  To the extent that Ozoroski's complaint seeks prospective relief, however, "the suit is against the officer as an individual."  Id.

state.[12]  As such, they are jurisdictionally barred by the Eleventh Amendment and must be dismissed.  Leave to amend will be denied as futile.  See Grayson, 293 F.3d at 108 (observing that the district court may exercise its discretion to dismiss a claim with prejudice when leave to amend would be futile).

### B.    Statute of Limitations

Defendants Wexford, PHS, Edelman, Maue, and Cerullo contend that the statute of limitations on Ozoroski's Eighth Amendment claim has expired.  Federal Rule of Civil Procedure 8(c) classifies a statute of limitations claim as an affirmative defense that must be pled in an answer to the complaint.  See FED. R. CIV. P. 8(c).  Additionally, Rule 12(b) requires that all defenses be asserted in an answer except those expressly enumerated in the rule.  See FED. R. CIV. P. 12(b).  The Federal Rules do not require a plaintiff to proffer specific allegations regarding the timing of the alleged offense, and Rule 12(b) does not provide for the pre-answer assertion of a limitations defense.  See id.; Wilson v. McVey, 579 F. Supp. 2d 685, 689 (M.D. Pa. 2008).  Nevertheless, a district court may dismiss a complaint as time-barred if "the time alleged in the statement of a claim shows that the cause of action has not been

---

[12] The Eleventh Amendment's jurisdictional bar is subject to only two exceptions: (1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment, or (2) a state may waive its sovereign immunity by consenting to suit.  Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999); Koslow v. Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002).  Neither exception is applicable to the instant matter.  It is well settled that Congress had no intention to abrogate the states' sovereign immunity by enacting § 1983, Will, 491 U.S. at 66, and Pennsylvania has unequivocally withheld its consent to such suits, see 42 PA. CONS. STAT. § 8521(b).

brought within the statute of limitations."  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Vetetrans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1974)); see also Oshiver, 38 F.3d at 1384 n.1 ("While the language of FED. R. CIV. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.").

Civil rights claims are governed by the state statute of limitations applicable to personal injury actions.  See O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006).  In Pennsylvania, the applicable limitations period is two years.  See PA. CONS. STAT. § 5524(7); see also Disabled in Action of Pa. v. Se. Pa. Transp. Auth., 539 F.3d 199, 208 (3d Cir. 2008).  "[U]nder federal law, which governs the accrual of section 1983 claims, the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action."  Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998) (quoting Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991)).

The complaint was filed on January 14, 2008.  Defendants contend that any claims that accrued more than two years prior to the filing thereof—January 14, 2006—are barred by the statute of limitations.  Ozoroski concedes this point, but urges the court to apply a "continuing violation theory" to the conduct of each of the above-described defendants.  He argues that "there is a course of conduct by Defendants from 1993 to October 2007 that details a course of deliberate

13

indifference to Plaintiff's medical care." (Doc. 39 at 2.) Additionally, Ozoroski

contends that the uniform denials to his requests for treatment illustrate an

unchanging policy to which each of the defendants adhered, (see id. at 3), and he

claims that "[i]t would have been prohibitive . . . to sue over each and every

violation of [the] right to proper health care" (id. at 4). Thus, Ozoroski urges the

court to conceptualize his allegations as a single continuing act, rather than a series

of isolated constitutional torts, allowing him "to reach back to [the] beginning [of

the violation] even if that beginning lies outside the statutory limitations period."

(Doc. 44 at 2.)

"The continuing violations doctrine is an equitable exception to the timely

filing requirement." Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001)

(quoting West v. Phila. Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995)). A plaintiff

asserting a continuing violation must establish that the defendant's actions were

more than "isolated or sporadic acts." West, 45 F.3d at 755. "When a defendant's

conduct is part of a continuing practice, an action is timely so long as the last act

evidencing the continuing practice falls within the limitations period; in such an

instance, the court will grant relief for the earlier acts that would otherwise be time

barred." Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283,

1295 (3d Cir. 1991) (quoting Keystone Ins. Co. v. Houghton, 863 F.2d 1125, 1129 (3d

Cir. 1988)); see also Cowell, 263 F.3d at 292.

At this juncture, the court is unable to determine the applicability of the

continuing violations doctrine because the record is incomplete with respect to

exhaustion of administrative remedies.  Ozoroski claims that on August 7, 2000, he

filed the first of many formal grievances protesting the refusal to authorize surgery.

At least four additional grievances were filed: on June 10, 2001, October 28, 2002,

June 28, 2004, and November 9, 2004.  It is unclear from the face of the complaint

whether Ozoroski received final decisions regarding each of these grievances;

whether he had the opportunity to appeal the final decision; and whether he

received a decision on the appeal.[13]  In short, it is unclear whether Ozoroski

exhausted his administrative remedies under the Prison Litigation Reform Act

("PLRA").

The PLRA requires prisoners to present their claims through an

administrative grievance process before seeking redress in federal court.  The Act

specifically provides as follows:

> No action shall be brought with respect to prison conditions under
> [§ 1983], or any other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such administrative remedies
> as are available are exhausted.

42 U.S.C. § 1997e(a).  A prisoner must comply with the PLRA exhaustion

requirement as to *any* claim that arises in the prison setting, regardless of the

nature of the claim or of the relief sought.  See Porter v. Nussle, 534 U.S. 516, 532

(2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about

prison life, whether they involve general circumstances or particular episodes, and

---

[13] Ozoroski specifically avers that he never received an appeal decision for the
grievance filed on June 28, 2004.  (Doc. 31 ¶ 64.)

whether they allege excessive force or some other wrong."); <u>Booth v. Churner</u>, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").  Several district courts in this circuit have determined that the statute of limitations applicable to § 1983 is tolled while an inmate exhausts his or her administrative remedies under the PLRA.  <u>See, e.g.</u>, <u>Carter v. Pa. Dep't of Corr.</u>, Civ. A. No. 08-0279, 2008 WL 5250433, at *11 (E.D. Pa. Dec. 17, 2008) ("[T]he statute of limitations begins to run only when [a] plaintiff has exhausted his administrative remedies under the PLRA."); <u>Cooper v. Beard</u>, Civ. A. No. 06-0171, 2006 WL 3208783, at *8 (E.D. Pa. Nov. 2, 2006) ("Because an inmate would be placed in a situation where his suit would either be barred from federal court for failure to exhaust administrative remedies under the PLRA, or time-barred because he had pursued those administrative remedies . . . the statute of limitations for an inmate's § 1983 claims are tolled while he exhausts his administrative remedies."); <u>see also</u> <u>Jackson v. Baddick</u>, No. Civ. A. 02-CV-6779, 2004 WL 1737635, at *11 (E.D. Pa. Aug. 2, 2004).[14]  Although the Third Circuit has not ruled definitively on this issue, the court finds the reasoning of our sister courts sufficiently persuasive to allow Ozoroski to progress past the motion to dismiss stage.

---

[14] Other circuits have also held that the applicable statute of limitations period is tolled while a prisoner exhausts his or her administrative remedies under the PLRA.  <u>See</u> <u>Brown v. Valoff</u>, 422 F.3d 926, 942-43 (9th Cir. 2005); <u>Jones v. Rivera</u>, 272 F.3d 519, 522 (7th Cir. 2001); <u>Brown v. Morgan</u>, 209 F.3d 595, 596 (6th Cir. 2000).

Ozoroski claims that he filed a grievance on June 28, 2004, which was rejected by the DOC. This grievance decision was allegedly appealed, but Ozoroski claims that he never received a ruling on the appeal. Another grievance was filed on November 9, 2004. This grievance was also rejected by the DOC, but the complaint does not indicate whether a decision on appeal was provided to Ozoroski. Absent a decision on appeal, Ozoroski's administrative grievances remain potentially unexhausted and, under the reasoning expressed <u>supra</u>, the statute of limitations on the § 1983 claims may be tolled. Although it is possible that facts unearthed in discovery will suggest otherwise, the face of the complaint does not contain sufficient information upon which the court may determine whether the § 1983 claims are time-barred.[15] Thus, the statute of limitations defenses raised by Wexford, Maue, and Cerullo must be denied.

Additionally, the contentions Ozoroski advances against PHS and Edelman are sufficient to overcome the statute of limitations defense. The complaint avers that in spite of his ongoing pain and discomfort, PHS "continually denied medical treatment" to Ozoroski until December 2006. (Doc. 31 ¶ 86.) This allegation places PHS's behavior squarely within the appropriate limitations period. Furthermore,

---

[15] Should defendants wish to reassert the statute of limitations defenses in a future motion for summary judgment, they must address the tolling of the limitations period under the PLRA, as well as the applicability of the continuing violations doctrine to the facts of this case. Specifically, the parties would be well-advised to address the extent to which the reasoning of our sister court in the Eastern District of Pennsylvania, <u>Carter v. Department of Corrections</u>, Civ. A. No. 08-0279, 2008 WL 5250433 (E.D. Pa. Dec. 17, 2008), controls the resolution of the statute of limitations question in the instant matter.

Ozoroski contends that Edelman is the director of PHS, and that he was personally involved in PHS decision making with respect to Ozoroski's treatment.  Thus, Edelman's involvement in the alleged denial of medical care also falls within the two year limitations period.  Accordingly, the court must deny the statute of limitations defenses raised by both PHS and Edelman.

###   C.   Eight Amendment Claims

The Eighth Amendment prohibits "cruel and unusual punishments."  U.S. CONST. amend. VIII.  In the context of prisoner confinement, it is well established that this prohibition obligates the government "to provide medical care for those whom it is punishing by incarceration."  Estelle v. Gamble, 429 U.S. 97, 103 (1976); see also Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Reynolds v. Wagner, 128 F.3d 166, 172-73 (3d Cir. 1997).  As the Supreme Court explained in Estelle, "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.  In the worst cases, such a failure may actually produce physical torture or a lingering death."  Estelle, 429 U.S. at 103 (quoting In re Kemmler, 136 U.S. 436, 447 (1890)).

An Eight Amendment claim arising from denial of medical care requires the plaintiff to allege that the defendant acted "with deliberate indifference to his or her serious medical needs."  Id. at 104; see also Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); Allen v. Warden of Dauphin County Jail, 1:07-CV-1720, 2008 WL 4452662, at *3 (M.D. Pa. Sept. 29, 2008).  This standard imposes a twofold burden upon the plaintiff.  First, the plaintiff must

18

objectively establish that the deprivation of medical care or the result thereof was sufficiently serious to implicate a constitutional violation.  <u>Montgomery v. Pinchak</u>, 294 F.3d 492, 499 (3d Cir. 2002) (citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)).  A medical need is serious when it "has been diagnosed by a physician as requiring treatment or . . . is so obvious that a lay person would easily recognize the necessity for a doctor's attention." <u>Lanzaro</u>, 834 F.2d at 347 (citations and internal quotations omitted).  Second, the plaintiff must demonstrate that prison officials subjectively knew of the deprivation and "disregard[ed] an excessive risk to [the] inmate['s] health or safety." <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003).  Claims of negligence or medical malpractice alone are insufficient to establish deliberate indifference.  <u>See</u> <u>Spruill v. Gillis</u>, 372 F.3d 218, 235 (3d Cir. 2004).  Rather, deliberate indifference requires "obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999) (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986)).  The Third Circuit has found that prison officials act with deliberate indifference when (1) reasonable requests for medical treatment are denied, exposing the inmate to undue suffering or the threat of further injury; (2) necessary medical treatment is delayed for non-medical reasons; (3) arbitrary and burdensome procedures are erected to create interminate treatment delays to suffering prisoners; and (4) inmates are prevented from receiving access and treatment from capable medical professionals.  <u>See</u> <u>Lanzaro</u>, 834 F.2d at 346-47; <u>see also</u> <u>Allen</u>, 2008 WL 4452662, at *3.

19

In order to state a valid Eighth Amendment claim under § 1983, a plaintiff must adequately plead facts suggesting that the defendants acted under color of law, that the defendants violated the plaintiff's federal constitutional rights, and that the violation caused plaintiff to sustain an injury. Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005). The court will address the § 1983 claims with respect to each of the remaining defendants.

### 1.   **PHS and Gaudenzia**

PHS is a private corporation that contracts with the state of Pennsylvania to provide medical care for the DOC. (See Doc. 31 ¶ 11.) Gaudenzia is a private treatment facility and rehabilitation center that contracts with the DOC to provide mental health and medical care for DOC inmates. (See id. ¶ 15(1)). A private corporation contracting with the state cannot incur § 1983 liability by virtue of *respondeat superior*. See Natale, 318 F.3d at 583-84; see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978) (holding that a municipality may not be held liable under § 1983 on a theory of *respondeat superior*). In order to hold a private corporation liable under § 1983, a plaintiff must show that he or she suffered a constitutional deprivation resulting from an official corporate policy or custom. See Natale, 318 F.3d at 583-84 (applying Monell to PHS); see also Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 404 (1997); Griggs v. Dauphin County Prison, 1:CV-06-0823, 2008 WL 2518090, at *4 (M.D. Pa. June 19, 2008). A policy is an official proclamation or edict, while a custom is a practice that is "so permanent and well settled as to virtually constitute law." Beck v. City of Pittsburgh, 89 F.3d 966, 971

20

(3d Cir. 1996) (quoting <u>Andrews v. City of Phila.</u>, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted)).

Ozoroski alleges that PHS policy was to deny summarily each of his many requests for abdominal surgery.  Ozoroski alleges that PHS was aware of the seriousness of his medical condition, but unilaterally denied all requests for outside surgery in order to cut costs.  At the very least, these averments suggest that PHS maintained a policy or custom to effectively deny Ozoroski adequate medical care in violation of his Eighth Amendment rights.  Taking these facts as true, this showing is sufficient to suggest a plausible right to relief.  <u>See</u> <u>Phillips</u>, 515 F.3d at 234; <u>see also</u> <u>Carter</u>, 2008 WL 5250433, at *8 (denying a PHS motion to dismiss when prisoner-plaintiff alleged repeated, outright denials of medical care for cost-saving reasons).

Ozoroski's <u>Monell</u> claim against Gaudenzia is more problematic.  After his transfer to the rehabilitation center in December 2006, Ozoroski alleges that the resident medical supervisor, Ms. Marsh, as well as the unit manager, Mr. Means, prevented him from using a telephone to schedule surgery with the VA.[16]  After he began treatment at the VA, Ozoroski avers that another unit manager, Ms. Poe, refused to accommodate his physical shortcomings, many of which were side effects

---

[16] The effort to block Ozoroski's use of the telephone was apparently circumvented by Gaudenzia supervisor Bellos, who arranged for Ozoroski's eventual transport to the VA.  (<u>See</u> Doc. 31 ¶¶ 91-93.)  If anything, this undercuts Ozoroski's contention that Marsh and Means were acting pursuant to a Gaudenzia custom or policy.

of his ongoing treatment.  Ozoroski argues that this indifference to his needs was the direct product of a Gaudenzia policy or custom.

These claims are insufficient to suggest a plausible right to relief.  No policy or custom is identified, nor can one plausibly be implied from Ozoroski's averments. Instead, Ozoroski merely identifies what appear to be the isolated incidents of three Gaudenzia employees.  Assuming *arguendo* that these employees acted inappropriately, <u>Monell</u> liability may not be premised upon a theory of *respondeat superior*.  <u>See</u> <u>Natale</u>, 318 F.3d at 583-84.  Thus, the court will dismiss Ozoroski's Eighth Amendment claim against Gaudenzia.  However, the court will grant Ozoroski leave to amend his complaint in order to allege sufficient facts to suggest that Gaudenzia maintained a policy or custom that ultimately led to Ozoroski's denial of adequate medical care.

### 2.    Edelman, Cerullo, Velasquez, and Cantey

To survive a motion to dismiss, a § 1983 claim must allege that each defendant was personally involved in the deprivation of rights.  Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also Evancho, 423 F.3d at 353 ("A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing.").  A defendant's personal involvement in a constitutional violation may be established via allegations of "personal direction," "actual knowledge and acquiescence," or "direct discrimination."  Evancho, 423 F.3d at 353; see also Andrews, 895 F.2d at 1478.  This court has described the specificity required of a plaintiff's allegations as follows:

> [A]llegations are sufficient to survive a motion to dismiss when they
> name the individuals responsible, the conduct, the time, and the place
> of the incident that deprived a plaintiff of his civil rights. Conversely,
> alleging a mere hypothesis that an individual defendant had personal
> knowledge or involvement in depriving the plaintiff of his rights is
> insufficient. Accordingly, a § 1983 complaint must be dismissed when
> it fails to contain even a remote suggestion that a supervisory
> defendant had contemporaneous, personal knowledge of the alleged
> harm and acquiesced in it.

Kirk v. Roan, 1:04-CV-1990, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006)

(quoting Evancho, 423 F.3d at 353 and Rode, 845 F.2d at 1207) (internal citations

omitted).

In the instant matter, the allegations levied against Edelman and Cerullo are

sufficient to state Eighth Amendment claims against each defendant. Ozoroski

avers that Edelman is the director of PHS, that he is responsible for making

decisions regarding PHS treatment, and that he played an instrumental role in the

denial of recommended treatment on multiple occasions in 2004. (See Doc. 31 ¶¶ 12,

51-64.) Cerullo is the Health Care Administrator at SCI Mahoney, and is

purportedly responsible for ensuring that outside medical providers furnish

adequate treatment to deserving inmates. (See id. ¶ 13.) According to the

complaint, Ozoroski was scheduled for treatment at a VA hospital in late 2004, but

Cerullo refused to permit his prerelease. (Id. ¶¶ 66-69.) Treatment by the VA was

consequently delayed. In this fashion, Ozoroski alleges that both Edelman and

Cerullo were personally involved in the deprivation of his medical care; Edelman

personally directed PHS's denial of Ozoroski's authorization requests, while Cerullo

purportedly ordered prison staff to take actions that ultimately delayed Ozoroski's

23

acquisition of surgical care.  Ozoroski's allegations are sufficient under § 1983 and thus will be permitted to move forward.

Ozoroski's allegations against Velasquez and Cantey, however, are clearly insufficient under the above-described standard.  Velasquez is identified by the complaint as director of the Gaudenzia Diagnostic Research Center, while Cantey is identified as Gaudenzia's head medical supervisor.  (Doc. 31 ¶¶ 14-15.)  Ozoroski makes no specific allegations regarding either Velasquez or Cantey; no wrongful conduct, time, or place is presented.  Ozoroski seems to imply that by virtue of their supervisory positions within the Gaudenzia hierarchy, both Velasquez and Cantey were personally knowledgeable about or involved in the violation of Ozoroski's civil rights.  This allegation is inadequate under the applicable law and the court must therefore dismiss the claims.  However, the court will permit Ozoroski leave to amend his complaint in order to allege sufficient facts to suggest that either Velasquez or Cantey were personally involved in the purported constitutional torts.

### D.   Retaliation

Ozoroski alleges that defendants retaliated against him by refusing to provide adequate medical care after he began filing formal grievances with the DOC.[17]  In order for a prisoner-plaintiff to establish a retaliation claim under the First Amendment, he or she must prove: (1) conduct or speech protected by the First

---

[17] These allegations appear in Count IV of the complaint.  Ozoroski also alleges that in February 2008 he was the victim of a retaliatory transfer from Gaudenzia to SCI Mahoney.  This allegation is addressed separately infra.

Amendment, (2) "adverse action" suffered at the hands of prison officials, and (3) a causal link between the constitutionally protected conduct or speech and the retaliatory action.  Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001); see also Wolfe v. Pa. Dep't of Corr., 334 F. Supp. 2d 762, 773-74 (E.D. Pa. 2004).  Filing an administrative grievance constitutes protected First Amendment conduct.  See Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981).  Moreover, Ozoroski's allegation that prison officials refused to provide adequate medical care *because of* his decision to file an administrative grievance facially qualifies as "adverse action" causally linked to protected conduct.  See Rauser, 241 F.3d at 333-34.

Although these contentions are sufficient to state a retaliation claim against some of the defendants involved in his treatment, Ozoroski makes no attempt to narrow the class of defendants whom he wishes to hold liable.  Rather, the complaint simply alleges that all ten of the named defendants "refus[ed] Plaintiff medical treatment."  (Doc. 31 ¶ 141.)  This broad retaliatory denial claim is curious given that several defendants had no contact with Ozoroski during the time that he sought relief through the grievance process.  For example, Ozoroski's final grievance was filed in November 2004, yet he was not transferred to Gaudenzia until December 2006.  Thus, over two years passed between the filing of his final grievance and his first contact with the Gaudenzia defendants, rendering retaliatory denial claims against the Gaudenzia-associated defendants both tenuous and potentially time-barred.  See O'Connor, 440 F.3d at 127 (holding that the statute of limitations on a § 1983 is two years).  In a similar vein, Ozoroski's first formal

25

grievance was not filed until August 2000, yet he asserts retaliation claims against Reidell, who was last involved in Ozoroski's treatment in 1996. The chronology underlying this assertion simply makes no sense.

The court finds that the retaliatory denial allegations raised against Maue, Wexford, PHS, Edelman, and Cerullo are sufficient to state a claim for relief. Each of these defendants allegedly participated in the denial of adequate medical care between 2000 and 2004—the time frame in which Ozoroski's grievances were filed. However, the court finds that with respect to Reidell, Rowe, Gaudenzia, Velasquez, and Cantey, the retaliation claim is insufficiently detailed under the pleading standard articulated by Twombly and Phillips. Ozoroski has failed to place each defendant on notice of "what . . . the claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Twombly, 550 U.S. at 555). At this stage of the litigation, Ozoroski need not provide extensive factual detail. But he must provide enough factual matter with respect to each named defendant to suggest the required elements. See Phillips, 515 F.3d at 234; Twombly, 550 U.S. at 556. According to the complaint, none of the defendants in the latter group had contact with Ozoroski during the four-year period when he was seeking redress through the grievance process. Absent additional precision in his pleading, it is improper to subject Reidell, Rowe, Gaudenzia, Velasquez, and Cantey to Ozoroski's retaliatory denial claim; the court will therefore dismiss the claim with respect to these defendants. Leave to amend will be permitted to rectify the deficiency hereinabove described.

26

Ozoroski separately alleges that he suffered a retaliatory transfer from Gaudenzia back to SCI Mahoney subsequent to filing the complaint in January 2008.[18]  In February 2008, Ozoroski was housed at the Gaudenzia rehabilitation center, but was scheduled for transfer to the VA hospital in Lebanon, Pennsylvania. (Doc. 31 ¶ 151.)  Instead, he was returned to SCI Mahoney, allegedly in retaliation for initiating this civil lawsuit.  Ozoroski identifies only Gaudenzia as a defendant in connection with this claim, but it is unclear whether he intended to name others.[19] Gaudenzia has not moved to dismiss Ozoroski's retaliatory transfer claim against it and the court will not address it.

### E.    <u>Sufficiency of Service</u>

Under Rule 4, a plaintiff must arrange for personal service of a summons and complaint upon each defendant unless the defendant waives service.  <u>See</u> FED. R. CIV. P. 4(c)(1), (2); 4(d); 4(e).  The plaintiff must arrange for personal service in the absence of a waiver, and service must be performed by "[a]ny person who is at least

---

[18] These claims appear in Count V of the complaint.

[19] Ozoroski's retaliatory transfer claim also suffers from factual convolution. For example, he asserts claims against "the Defendants in the Department of Corrections," but fails to identify any specific individuals.  (<u>See</u> Doc. 31 ¶ 151.)  Of the remaining named defendants, only Maue and Cerullo may be characterized as DOC employees, but Ozoroski has not alleged that they were responsible for the retaliatory transfer.  Thus, the court will not consider them defendants for purposes of this claim.  In the event that Ozoroski intended to name additional defendants, the omission is fatal; a complaint must provide each defendant notice of the claims lodged against it.  <u>See</u> <u>Phillips</u>, 515 F.2d at 232; <u>see also</u> <u>Twombly</u>, 550 U.S. at 555. The court will allow Ozoroski leave to amend should he wish to assert this claim with more clarity.

18 years old and not a party" to the action.  Id. R. 4(c)(2).  If a plaintiff fails to serve

process as set forth in Rule 4, a court possesses discretion either to dismiss the

complaint or to quash service and grant plaintiff additional time to serve the

summons and complaint.  See Mitchell v. Theriault, 516 F. Supp. 2d 450, 457 (M.D.

Pa. 2007); see also FED. R. CIV. P. 4(m).  "However, dismissal of a complaint is

inappropriate when there exists a reasonable prospect that service may yet be

obtained.  In such instances, the district court should, at most, quash service,

leaving the plaintiff[] free to effect proper service."  Mitchell, 516 F. Supp. 2d at 457

(quoting Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir. 1992)).

        In the instant matter, it appears that Ozoroski has not yet served either

Reidell or Rowe.  As of the date hereof, Reidell and Rowe have not waived service,

nor has Ozoroski submitted an affidavit stating that he has served the complaint.

The court will require Ozoroski to show cause within thirty days why the claims

against Reidell and Rowe should not be dismissed.  See FED. R. CIV. P. 4(m).

Failure to show good cause will result in dismissal of the claims against these

defendants.

**IV.    Conclusion**

        For the foregoing reasons, the court will dismiss the official capacity claims

against Maue and Cerullo as jurisdictionally barred.  Additionally, the court will

dismiss the allegations arising under the Eighth Amendment against Gaudenzia,

Velasquez, and Cantey.  Ozoroski's Eighth Amendment claims against Wexford,

PHS, Edelman, Maue, and Cerullo are neither precluded by the statute of

limitations, nor are they facially deficient; these claims will be permitted to move forward. The First Amendment retaliatory denial claims will be dismissed with respect to Reidell, Rowe, Gaudenzia, Velasquez, and Cantey, but denied with respect to the other defendants. Ozoroski's uncontested retaliatory transfer claim against Gaudenzia may also proceed. The court will grant Ozoroski thirty days to file an amended complaint, subject to the limitations set forth in the memorandum and order. Ozoroski will be required to show cause within thirty days why the claims against Reidell and Rowe should not be dismissed for failure to effectuate service in a manner consistent with Rule 4.

An appropriate order follows.


    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:        February 18, 2009

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STANLEY N. OZOROSKI,** | : | **CIVIL ACTION NO. 1:08-CV-0082** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DR. FREDERICK R. MAUE, DR.** | : | |
| **JOHN S. REIDELL, WEXFORD** | : | |
| **HEALTH SOURCES, INC., DR.** | : | |
| **DAVID E. ROWE, PRISON HEALTH** | : | |
| **SERVICES, INC., DR. ADAM A.** | : | |
| **EDELMAN, MARVA CERULLO,** | : | |
| **CECILIA VELASQUEZ, CHERYL** | : | |
| **CANTEY, and GAUDENZIA, D.R.C.,** | : | |
| | : | |
| **Defendants** | : | |

**ORDER**

AND NOW, this 18th day of February, 2009, upon consideration of the

motions to dismiss (Docs. 33, 35, 37, 47), and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1.  The motion to dismiss (Doc. 33) filed by Wexford Health Sources,
    Incorporated is DENIED.

2.  The motion to dismiss (Doc. 35) filed by Dr. Frederick R. Maue and
    Marva Cerullo is GRANTED in part and DENIED in part as follows:

    a.  The motion is GRANTED with respect to the claims filed
        against Dr. Frederick R. Maue and Marva Cerullo in their
        official capacity.  Leave to amend is denied as futile.  Grayson,
        293 F.3d at 108.

    b.  The motion is DENIED with respect to the claims filed against
        Dr. Frederick R. Maue and Marva Cerullo in their individual
        capacity, alleging the denial of medical care and First
        Amendment retaliation.

3.     The motion to dismiss (Doc. 37) filed by Gaudenzia, D.R.C., Cecilia
       Velasquez, and Cheryl Cantey is GRANTED.  Leave to amend is
       granted in accordance with Paragraph 5.

4.     The motion to dismiss (Doc. 47) filed by Prison Health Services,
       Incorporated and Dr. Adam A. Edelman is DENIED.

5.     Plaintiff shall be permitted to file an amended complaint on or before
       March 18, 2009 for purposes of alleging the following:

       a.     The existence of a specific policy or custom held by Gaudenzia,
              D.R.C. that caused plaintiff's injury.

       c.     Personal involvement in the alleged Eighth Amendment
              violations by Cecilia Velasquez and Cheryl Cantey.

       d.     Facts sufficient to state a plausible right to relief for First
              Amendment retaliation against Dr. John S. Reidell, Dr. David E.
              Rowe, Gaudenzia, D.R.C., Cecilia Velasquez, and Cheryl Cantey.

6.     On or before March 18, 2008, plaintiff shall SHOW CAUSE why the
       claims against Dr. John S. Reidell and Dr. David E. Rowe should not
       be dismissed for failure to effect service.  See FED. R. CIV. P. 4(m).  The
       claims against these defendants will be dismissed absent a showing of
       good cause.

7.     The pretrial stay imposed by the order of court (Doc. 59) dated
       November 19, 2008 is LIFTED.

8.     A revised pretrial and trial schedule shall issue by future order of
       court.


       S/ Christopher C. Conner
       CHRISTOPHER C. CONNER
       United States District Judge