# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STANLEY N. OZOROSKI,** | CIVIL ACTION NO. 1:08-CV-0082 |
| **Plaintiff** | (Judge Conner) |
| v. | |
| **DR. FREDERICK R. MAUE, WEXFORD HEALTH SOURCES, INC., PRISON HEALTH SERVICES, INC., DR. ADAM A. EDELMAN, MARVA CERULLO, CECILIA VELASQUEZ, CHERYL CANTEY, and GAUDENZIA, D.R.C.,** | |
| **Defendants** | |

## MEMORANDUM

Stanley Ozoroski brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging that he was denied access to adequate medical treatment during his incarceration at the state correctional facilities at Rockview and Mahoney, and during his treatment at the Gaudenzia Drug Rehabilitation Center in Philadelphia. Presently before the court is a motion to dismiss (Doc. 71) the third amended complaint (Doc. 68), filed by defendants Gaudenzia, D.R.C. ("Gaudenzia"), Cecilia Velasquez ("Velasquez"), and Cheryl Cantey ("Cantey"). For the reasons that follow, the motion will be granted in part and denied in part.

**I.     Statement of Facts**[1]

The allegations in this matter date back to November 1993, when plaintiff Stanley Ozoroski ("Ozoroski")—who was then an inmate at the Pennsylvania state correctional facility at Rockview ("SCI Rockview")—underwent what he characterizes as an erroneously performed exploratory laparoscopy. (Doc. 68 ¶¶ 19-20.) Ozoroski purportedly suffered severe physical complications arising from this procedure and claims that over a period of several years, he was repeatedly denied adequate medical treatment by physicians, administrators, and health service providers under contract with the Pennsylvania Department of Corrections ("DOC"). The court detailed the allegations levied against each of these defendants in its memorandum dated February 18, 2009. (See Doc. 63.) An exhaustive recitation of those allegations is unnecessary for purposes of the instant motion, and the court will thus restrict its focus to the averments concerning Gaudenzia, Velasquez, and Cantey.

In December 2006, Ozoroski was transferred from the state correctional facility at Mahoney ("SCI Mahoney") to the Gaudenzia Drug Rehabilitation Center of Philadelphia, administered by defendant Gaudenzia. (Doc. 68 ¶ 102.) Prior to his transfer, Ozoroski was examined by Dr. Kenneth Widom of the Geisinger Medical Center, who purportedly recommended that Ozoroski undergo abdominal surgery to alleviate pain and complications persisting from previous medical procedures.

---

[1] In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in the complaint. See infra Part II.

2

(Id. ¶ 101.) Dr. Widom advised Ozoroski to contact him after Ozoroski's transfer to Gaudenzia was finalized in order to schedule an operation. (Id.)

Ozoroski arrived at Gaudenzia and notified his medical supervisor, Ms. Marsh, that he needed to use the telephone in order to arrange an appointment with Dr. Widom. (Id. ¶ 102.) Ms. Marsh purportedly denied him access to a telephone. (Id.) Ozoroski's unit manager at Gaudenzia, Mr. Means, and his counselor, Joe Williams, also refused Ozoroski's requests to use the telephone. (Id. ¶ 103.) Ozoroski claims that Marsh, Means, and Williams each refused his requests pursuant to a directive issued by Velasquez and Cantey. (See id.) On January 11, 2007, Ozoroski met with Gaudenzia employee Ernie Bellos ("Bellos"). After Ozoroski explained that other Gaudenzia staff members had denied him access to the telephones, Bellos assisted Ozoroski in his attempt to contact Dr. Widom. (Id. ¶¶ 108-112.) From January 2007 to October 2007, Ozoroski attended several appointments at a veterans' hospital, which eventually culminated in abdominal surgery in October 2007. (Id. ¶ 119.) The operation required the removal of 50% of Ozoroski's intestinal tract. (Id. ¶ 120.)

On January 14, 2008, Ozoroski commenced this action by filing a complaint. (Doc. 1.) The complaint alleged, *inter alia*, that Gaudenzia, Velasquez, and Cantey acted with deliberate indifference to Ozoroski's medical needs and deprived him of adequate medical care. (Id. ¶ 105.) At the time when Ozoroski prepared his complaint, he was scheduled for transfer from Gaudenzia to the veterans' hospital in Lebanon, Pennsylvania. After filing, however, he was allegedly returned to SCI

3

Mahoney, where he is currently incarcerated. (Doc. 68 ¶ 171.) Ozoroski subsequently amended his complaint in order to include allegations of the retaliatory transfer. (Doc. 7 ¶¶ 161-63.)

Gaudenzia, Velasquez, and Cantey moved to dismiss Ozoroski's second amended complaint on May 21, 2008. (See Doc. 37.) The court granted this motion on February 19, 2009, (see Doc. 63), but permitted Ozoroski leave to amend. On March 17, 2009, Ozoroski filed a third amended complaint, which included additional factual averments intended to address the deficiencies identified in the court's dismissal memorandum. (Compare Doc. 68, with Doc. 31.) Gaudenzia, Velasquez, and Cantey moved to dismiss the third amended complaint on April 6, 2009. (Doc. 71.) That motion has been briefed and is now ripe for disposition.

## II. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran &

4

Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The plaintiff must present facts that, if true, demonstrate a plausible right to relief. See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (explaining that Rule 8 requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation"); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). Thus, courts should not dismiss a complaint for failure to state a claim if it contains "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556). Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III.   **Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law committed by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. Section 1983 is not a source of substantive rights, but merely a method for vindicating violations of other federal laws. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kopec v. Tate, 361 F.3d 772, 775-76 (3d Cir. 2004). To establish a claim under this section, the plaintiff must show the deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

In the action *sub judice*, Ozoroski alleges that defendants were deliberately indifferent to his serious need for abdominal surgery in violation of the Eighth Amendment. As a result of this deliberate indifference, Ozoroski contends that he was forced to endure excruciating pain and the eventual loss of half of his intestinal tract. Ozoroski further avers that he was the victim of unconstitutional retaliation when Gaudenzia transferred him to SCI Mahoney in reprisal for filing the initial

6

complaint in the above-captioned matter.² The court will address these claims *seriatim*.

A. **Eight Amendment Claims**

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. CONST. amend. VIII. In the context of prisoner confinement, it is well established that this prohibition obligates the government "to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976); see also Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Reynolds v. Wagner, 128 F.3d 166, 172-73 (3d Cir. 1997). As the Supreme Court explained in Estelle, "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical torture or a lingering death." Estelle, 429 U.S. at 103 (quoting In re Kemmler, 136 U.S. 436, 447 (1890)).

An Eight Amendment claim arising from the denial of medical care requires allegations that the defendant acted "with deliberate indifference to [plaintiff's] serious medical needs." Id. at 104; see also Monmouth County Corr. Institutional

---

² In the second amended complaint, Ozoroski alleged a general retaliation claim against all named defendants. (Doc. 31 ¶ 141-42.) The court noted in its previous dismissal memorandum (Doc. 63) that the second amended complaint was bereft of any averments specifying those defendants he sought to hold accountable under this theory of liability. (Id. at 26.) Accordingly, the court ordered Ozoroski to amend his general retaliation claim and provide enough factual matter with respect to each named defendant to suggest the elements required of the cause of action. (Id.) Ozoroski's makes no attempt to satisfy this requirement in his third amended complaint with respect to Gaudenzia, Velasquez, and Cantey. Therefore, the claim will be dismissed with prejudice as it pertains to these defendants.

Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); Allen v. Warden of Dauphin County Jail, 1:07-CV-1720, 2008 WL 4452662, at *3 (M.D. Pa. Sept. 29, 2008). This standard imposes a twofold burden upon the plaintiff. First, the plaintiff must objectively establish that the deprivation of medical care or the result thereof was sufficiently serious to implicate a constitutional violation. Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A medical need is serious when it "has been diagnosed by a physician as requiring treatment or . . . is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Lanzaro, 834 F.2d at 347 (citations and internal quotations omitted). Second, the plaintiff must demonstrate that prison officials subjectively knew of the deprivation and "disregard[ed] an excessive risk to [the] inmate['s] health or safety." Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). Claims that merely allege negligence or medical malpractice are insufficient to establish deliberate indifference. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). Deliberate indifference requires "obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). The Third Circuit has found that prison officials act with deliberate indifference when (1) reasonable requests for medical treatment are denied, exposing the inmate to undue suffering or the threat of further injury; (2) necessary medical treatment is delayed for non-medical reasons; (3) arbitrary and burdensome procedures are erected to create interminate treatment delays to

8

suffering prisoners; and (4) inmates are prevented from receiving access and treatment from capable medical professionals. See Lanzaro, 834 F.2d at 346-47; see also Allen, 2008 WL 4452662, at *3.

Ozoroski alleges that certain Gaudenzia employees were aware of his need to contact an outside physician, but that they unilaterally denied all his requests to do so. He claims that these employees were acting pursuant to Gaudenzia's policy of denying its patients adequate medical care in an effort to avoid treatment expenditures. (Doc. 68 ¶ 124.) Gaudenzia is a private corporation contracting with the state and, as such, cannot incur § 1983 liability by virtue of *respondeat superior*. See Natale, 318 F.3d at 583-84 (applying principles of Monell liability to private corporation contracting with the state to provide medical care for prison inmates); Davis v. First Corr. Med., 589 F. Supp. 2d 464, 470 (D. Del. 2008) (same); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978) (holding that a municipality may not be held liable under § 1983 on a theory of *respondeat superior*). In order to hold Gaudenzia liable under § 1983, Ozoroski must show that he suffered a constitutional deprivation resulting from an official corporate policy or custom. See Natale, 318 F.3d at 583-84; see also Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 404 (1997); Griggs v. Dauphin County Prison, 1:CV-06-0823, 2008 WL 2518090, at *4 (M.D. Pa. June 19, 2008). Ozoroski attempts to meet this pleading requirement by alleging, in conclusory fashion, that Gaudenzia's policy is to deny its patients adequate care. He fails to specify how this practice is embodied either in an official proclamation or edict, and the third amended complaint is

9

devoid of any other corroborative allegations. See Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (explaining requirements necessary to prove the existence of a policy or custom under Monell) (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted)). To the contrary, Ozoroski merely relies on a bald assertion coupled with a legal conclusion—in other words, his complaint fails to state a cognizable Eighth Amendment claim for relief vis-a-vis Gaudenzia. See Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. at 1950 (stating that although factual averments must be taken as true, the court need not accept a litigant's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements").[3]

The Eighth Amendment claim levied against Velasquez and Cantey is sufficient to survive the motion to dismiss. Ozoroski avers that Gaudenzia employees Marsh, Means, and Williams refused his requests to use the telephone *because of* a directive issued by Velasquez and Cantey. In this fashion, Ozoroski

---

[3] In Iqbal, the Supreme Court clarified the Rule 8 pleading requirements under Twombly. The Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, --- U.S. ---, 129 S. Ct. at 1949. Moreover, the Court clarified that legal conclusions "are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. In the instant matter, Ozoroski attempts to pass his legal conclusions as factual assertions. He alleges only that Gaudenzia has a policy to deny patients medical care, but offers no specific facts supportive of this conclusion. As the Iqbal Court made plain, under Twombly, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 1949 (internal quotation marks and citations omitted).

alleges that Velasquez and Cantey were personally involved in the denial of his treatment requests. Indeed, he avers that when he complained about his inability to use the telephones, Velasquez and Cantey personally explained to him that "the medical" was his problem. (Doc. 68 ¶ 114.) Accepting these allegations as true, Ozoroski has adequately alleged that both Velasquez and Cantey were personally involved denying Ozoroski adequate medical care. See Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988) (holding that a § 1983 claimant must allege that each defendant was personally involved in the deprivation of rights); see also Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) ("A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing."). A defendant's personal involvement in a constitutional violation may be established via allegations of "personal direction," "actual knowledge and acquiescence," or "direct discrimination." Evancho, 423 F.3d at 353; see also Andrews, 895 F.2d at 1478. Ozoroski contends that Velasquez and Cantey directed their employees to frustrate his attempts at obtaining treatment. These allegations

are sufficient and the motion by Velasquez and Cantey to dismiss this claim will be denied.[4]

### B. <u>**Retaliatory Transfer**</u>

Ozoroski alleges that he suffered a retaliatory transfer from Gaudenzia to SCI Mahoney subsequent to filing the original complaint in January 2008. (Doc. 68 at ¶ 171.) In February 2008, Ozoroski was housed at Gaudenzia, but was scheduled for transfer to the veterans' hospital in Lebanon, Pennsylvania—where he would ostensibly receive better medical care. (Id. ¶ 170.) Ozoroski was instead transferred to SCI Mahoney, an institution purportedly less well-attuned to his medical needs. Ozoroski alleges that this transfer was in retaliation for initiating this civil lawsuit. Furthermore, he contends that Gaudenzia and Jeffrey Beard,[5] Secretary of the DOC, were responsible for the transfer. Gaudenzia now moves to dismiss

---

[4] In the court's prior dismissal memorandum (Doc. 63), the Eighth Amendment claims levied against Velasquez and Cantey were denied because Ozoroski failed to assert the personal involvement of these defendants. The court therefore did not address whether Ozoroski adequately pled the elements of an Eighth Amendment claim as required by <u>Estelle</u>. In his Eighth Amendment claim, Ozoroski contends that he was denied use of the telephone from the time he was transferred to Gaudenzia—late December 2006—until January 11, 2007, when he met Bellos, who thereafter assisted Ozoroski in his efforts to have abdominal surgery. (Doc. 68 ¶¶ 102-108.) At this stage in the litigation, the court is unable to determine whether this relatively short-term obstruction constitutes the type of deprivation that is "sufficiently serious to implicate a constitutional violation." <u>Montgomery</u>, 294 F.3d at 499. This is an issue more properly adjudicated during summary judgment.

[5] Beard was originally named as a defendant in this matter. However, Ozoroski voluntarily dismissed him from the suit on May 28, 2008. (<u>See</u> Doc. 40 at 3.)

12

Ozoroski's retaliatory transfer claim on the ground that Ozoroski has not sufficiently established that Gaudenzia's action was the result of an unconstitutional policy or custom. (Doc. 71 ¶ 35.)

In order for a prisoner-plaintiff to establish a retaliation claim under the First Amendment, he or she must prove: (1) conduct or speech protected by the First Amendment, (2) "adverse action" suffered at the hands of state officials, and (3) a causal link between the constitutionally protected conduct or speech and the retaliatory action. Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001); see also Wolfe v. Pa. Dep't of Corr., 334 F. Supp. 2d 762, 773-74 (E.D. Pa. 2004). Filing a lawsuit constitutes protected First Amendment conduct. See Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981). Moreover, Ozoroski alleges that Gaudenzia transferred him to a location where he was less likely to receive adequate medical care and that it did so *because of* his decision to file this lawsuit. If true, this transfer constitutes "adverse action" causally linked to protected conduct. See Rauser, 241 F.3d at 333-34; see also Meriwether v. Coughlin, 879 F.2d 1037, 1045-46 (2d Cir. 1989) (holding that transfer solely in retaliation for exercise of constitutional rights violates a prisoner's constitutional rights)

However, Ozoroski's claim fails to satisfy a much more basic requirement of § 1983 state action liability: absent from the complaint are allegations that the transfer occurred because of a policy or custom held by Gaudenzia. See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) (explaining that Monell liability only when the alleged transgressor "implements or executes a policy, regulation, or

13

decision officially adopted by the governing body or informally adopted by custom"); see also Natale, 318 F.3d at 583-84 (applying principles of municipal liability to private corporation that contracts to provide services traditionally administered by the state). Ozoroski makes no attempt to link his alleged transfer to a policy or custom, or to explain this transfer at all. As the court noted in its previous dismissal memorandum, (Doc. 63 at 26), the retaliation claim is insufficiently detailed under the pleading standard articulated by Twombly and Phillips. Ozoroski's claim fails to adduce enough factual matter to suggest that the transfer from Gaudenzia to SCI Mahoney was the product of an unconstitutional Gaudenzia policy. Therefore, this claim will be dismissed. Leave to amend will be denied. See Grayson, 293 F.3d at 108.

## IV. Conclusion

For the foregoing reasons, the court will dismiss Ozoroski's § 1983 claims against Gaudenzia. However, Ozoroski's Eighth Amendment claims against Velasquez and Cantey have been pled with sufficient detail to move forward.

An appropriate order follows.

      S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge

Dated:       July 10, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STANLEY N. OZOROSKI,** | : | CIVIL ACTION NO. 1:08-CV-0082 |
| | : | |
| **Plaintiff** | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **DR. FREDERICK R. MAUE,** | : | |
| **WEXFORD HEALTH** | : | |
| **SOURCES, INC., PRISON** | : | |
| **HEALTH SERVICES, INC.,** | : | |
| **DR. ADAM A. EDELMAN,** | : | |
| **MARVA CERULLO,** | : | |
| **CECILIA VELASQUEZ, CHERYL** | : | |
| **CANTEY, and GAUDENZIA, D.R.C.,** | : | |
| | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 10th day of July, 2009, upon consideration of the motion to dismiss (Doc. 71), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion (Doc. 71) to dismiss plaintiff's third amended complaint (Doc. 68) is GRANTED in part and DENIED in part as follows:

    a. The motion is GRANTED with respect to all claims filed against filed against Gaudenzia, D.R.C.

    b. The motion is DENIED in all other respects.

2. The Clerk of Court is instructed to TERMINATE Gaudenzia as a named defendant in the above-captioned matter.

                                                S/ Christopher C. Conner
                                                CHRISTOPHER C. CONNER
                                                United States District Judge