**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STANLEY N. OZOROSKI,** | : | **Civil Action No. 1:08-CV-0082** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DR. FREDERICK R. MAUE, Chief of** | : | |
| **Clinical Services, WEXFORD** | : | |
| **HEALTH SOURCES, INC., PRISON** | : | |
| **HEALTH SERVICES, DR. ADAM A.** | : | |
| **EDELMAN, MARVA CERULLO,** | : | |
| **Health Care Administrator for S.C.I.** | : | |
| **Mahanoy, CECLIA VELASQUEZ,** | : | |
| **Director of Guardenzia DRC, and** | : | |
| **CHERYL CANTEY, Head Medical** | : | |
| **Supervisor of Guadenzia DRC,** | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Presently before the court is the report (Doc. 162) of the Honorable Martin C.

Carlson, United States Magistrate Judge, recommending that defendants' motions

(Docs. 92, 98, 100, 101) for summary judgment be granted and plaintiff's motion

(Doc. 146) to quash submission of defendant Prison Health Services' expert report

be denied as moot.  Plaintiff Stanley Ozorozski ("Ozoroski") filed objections (Doc.

168) to report and recommendation, as have defendants Cecilia Velasquez and

Cheryl Cantey ("Velasquez" and "Cantey") (Doc. 163), Dr. Adam Edelman ("Dr.

Edelman") (Doc. 165), and Wexford Health Sources, Inc. ("Wexford") (Doc. 167).

For the reasons set forth below, the court will adopt in part and reject in part the

report and recommendation and grant summary judgment in favor of defendants on all claims.

## I.   **Background**[1]

Plaintiff Stanley Ozoroski ("Ozoroski"), an inmate in the Pennsylvania state correctional system, filed the instant action pursuant to 42 U.S.C. § 1983 alleging he was denied necessary medical treatment.  His lengthy medical issues stem back to 1993 when he underwent a hernia repair operation in which he suffered a perforation of the small bowel.  Ozoroski underwent at least six additional surgeries all addressing various medical problems in his abdominal area linked to the 1993 hernia operation.  From 1993 through 2007, Ozoroski has been examined or treated by more than twenty different physicians.  Prison and medical officials monitored and treated Ozoroski's condition constantly.  Despite treatment, Ozoroski continued to suffer abdominal problems and developed an enterocutaneous fistula.[2]  The Pennsylvania Department of Corrections ("DOC") approved several outside surgical consults and off-site examinations for his condition, but ultimately pursued a non-surgical course of treatment.  Ozoroski believed that his condition required surgical treatment, but prison healthcare provider refused to approve the surgery.

---

[1]  The magistrate judge's report recites the undisputed facts of this case in greater detail.  The factual background set forth in this opinion is taken primarily from the magistrate judge's recitation of the facts, but it includes only those facts that are pertinent to the portions of the report and recommendation to which the parties have raised objections.

[2]  An enterocutaneous fistula is an abnormal passage connecting the intestine and skin of the abdomen.  STEDMAN'S MEDICAL DICTIONARY 736 (28th ed. 2006).

The record contains varying opinions of multiple physicians regarding the advisability of surgery.  Some physicians recommended surgery; others concluded that surgery would be too risky due to the serious morbidity and mortality rates.  On numerous occasions the DOC denied Ozoroski's requests for surgery after review and consultation on his medical file.  In December 2006, Ozoroski was released into the custody of Gaudenzia Drug Rehabilitation Center, although he remained under the control of the DOC.  With the assistance of the Veterans Affairs Hospital in Philadelphia, Pennsylvania, Ozoroski had surgery to repair his abdomen on October 8, 2007, at the University of Pennsylvania Hospital.

Ozoroski filed his initial complaint on January 14, 2008 naming multiple defendants.  (Doc. 1).  Ozoroski alleges that the repeated denial of surgery constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment.  He further contends that the defendants retaliated against him by denying him surgery after he submitted administrative grievances with the prison.  Subsequent to the filing of three amended complaints (see Docs. 7, 31, 68) and the disposition of a multitude of motions to dismiss (see Docs. 33, 35, 37, 47, 71, 79), the remaining named defendants filed motions for summary judgment on January 14, 2010 (Doc. 92) and January 15, 2010 (Docs. 98, 100, 101) respectively.  The remaining defendants are: Dr. Frederick R. Maue ("Dr. Maue"), Chief of Clinical Services of the Bureau of the Department of Corrections; Marva Cerullo ("Cerullo"), a Healthcare Administrator at SCI-Mahanoy; Wexford, a corporation contracted with the Pennsylvania Department of Corrections to provide healthcare

3

services to inmates from September 1996 to September 2003; Prison Health Services ("PHS"), another healthcare provider contracted to provide healthcare services to inmates from 2003 through all relevant dates to this action; Dr. Edelman, Director of Prison Health Services; Cecilia Velasquez, Director of Gaudenzia, a company contracted with the DOC to provide rehabilitation services to inmates; and Cheryl Cantey, head medical supervisor of Gaudenzia. After full briefing, this court referred the motions, as well as a motion (Doc. 146) filed by Ozoroski to quash the expert report of PHS, to Magistrate Judge Carlson. (See Doc. 161).

Magistrate Judge Carlson issued his report and recommendation (Doc. 162) on February 14, 2011. Judge Carlson recommended granting defendants' motions for summary judgment. He concluded that the statute of limitations bars suit in the present matter against Wexford, Dr. Maue and Cerullo and that the continuing violation doctrine is not applicable to Ozoroski's claims. He further determined that the exercise of defendants' professional medical judgment could not rise to the level of deliberate indifference necessary to establish an Eighth Amendment violation. Judge Carlson also briefly addressed Ozoroski's First Amendment retaliation claim. He recommended granting summary judgment in favor of PHS on the claim, but expressed some hesitancy as to the remaining defendants, asserting that they failed to brief the issue. Velasquez and Cantey filed objections (Doc. 163) on February 17, 2011, Dr. Edelman filed objections (Doc. 165) on February 23, 2011, Wexford filed objections (Doc. 167) on February 26, 2011, and Ozoroski filed objections (Doc. 168) on March 1, 2011.

4

## II.   Standard of Review

### A.   Standard of Review for a Motion for Summary Judgment

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  A motion for summary judgment places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

### B.   Standard of Review for a Magistrate Judge's Recommendation

Where objections to a magistrate judge's report and recommendation are filed, the court must perform a *de novo* review of the contested portions of the report.  Supinski v. United Parcel Serv., Civ. A. No. 06-0793, 2009 WL 113796, at *3 (M.D. Pa. Jan. 16, 2009) (citing Sample v. Diecks, 885 F.2d 1099, 1106 n. 3 (3d Cir. 1989); 28 U.S.C. § 636(b)(1)(c)).  "In this regard, Local Rule of Court 72.3 requires 'written objections which . . . specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for

those objections.'"  Id. (citing Shields v. Astrue, Civ. A. No. 07-417, 2008 WL 4186951,

at *6 (M.D. Pa. Sept. 8, 2008)).

## III.   Discussion

Ozoroski filed multiple objections to the report and recommendation of

Judge Carlson.  Essentially, he contends that Judge Carlson "went above and

beyond" the court's role at the summary judgment stage to determine whether

issues of material fact exist to preclude summary judgment.  (Doc. 168 ¶¶ 4-5).  His

assertions include that Judge Carlson erroneously: (1) stated that Ozoroski's last

grievance was filed in 2005 (id. ¶ 6); (2) stated that Ozoroski refused medical

treatment in January 2006 (id. ¶ 9); (3) concluded that peer review articles on

treatment of enterocutaneous fistula and documents from defendants' websites are

inadmissible hearsay (id. ¶¶ 10, 14); (4) concluded that the continuing violation

theory is inapplicable (id. ¶ 12); and (5) determined that the exercise of a physician's

discretion is not deliberate indifference (id. ¶ 15).  Defendants object to the

suggestion that they failed to move for summary judgment on the retaliation claim.

### A.   Ozoroski's Objections

#### 1.   Continuing Violations Doctrine

Ozoroski argues that the continuing violation doctrine applies to his claims

because all of the events that give rise to his cause of action occurred while he was

under the ultimate control of the Pennsylvania Department of Corrections.

Accordingly, the continuing violation doctrine should apply to all actions by

individual and corporate defendants employed or contracted with the DOC

6

establishing a continuing pattern and practice of denying Ozoroski medical care.

Judge Carlson concluded that the continuing violations doctrine is inapplicable in

the instant matter because the evidence does not support the aggregation of

defendants.  Rather, Judge Carlson observed that several of the defendants "had

only isolated and discrete contact with Ozoroski" or had no duty to provide medical

services after the expiration of their contracts with the DOC.  (Doc. 162, at 33-34).

Judge Carlson further concluded that Ozoroski's refusal of medical care in January

of 2006 triggered the application of the statute of limitations.  (Id. at 34).  Judge

Carlson's report and recommendation on the issue is well-reasoned and thorough.

The court adopts it.

Section 1983 claims are subject to the state's statute of limitations for

personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 266-67 (1985).  In

Pennsylvania the limitations period is two years.  42 PA. CONS. STAT. §5524.  The

limitations period begins to run when the plaintiff knows or has reason to know of

the injury upon which the cause of action is based, unless some exception tolls the

running of limitations period.  See Sameric Corp. of Delaware, Inc. v. City of

Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998).

The continuing violations doctrine is an equitable exception to the running of

the statute of limitations.  It applies 'when a defendant's conduct is part of a

continuing practice,' see Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001)

(quoting Brenner v. Local 514, United Bd. Of Carpenters and Joiners of Am., 927

F.2d 1283, 1295 (3d Cir. 1991)), and the conduct is 'more than the occurrence of

isolated or sporadic acts.' Id. (quoting West v. Philadelphia Elec. Co., 45 F.3d 744, 755 (3d Cir. 1995)).  Under the doctrine, a plaintiff may bring suit for otherwise time-barred acts "so long as the last act evidencing the continuing practice falls within the limitations period."  Id.  A court should consider three factors in determining the applicability of the continuing violation doctrine: (1) subject matter—similar conduct; (2) frequency—recurring or isolated conduct; and (3) degree of permanence—conduct of an unchanging nature as to trigger an awareness of and duty to assert rights.  Id. (citing West, 45 F.3d at 755 n.9).  The third factor carries the most weight in the analysis.  Id.  Courts are mindful, however, that "[e]quitable tolling is a rare remedy to be applied in unusual circumstances."  Wallace v. Kato, 549 U.S. 384, 396 (2007).

The most expansive reading of the continuing violations doctrine would not save Ozoroski's claims against Wexford.  Wexford had no authority to dictate Ozoroski's care subsequent to the termination of its contract with the DOC on September 1, 2003.  Even the Seventh Circuit, which appears to promote the most liberal application of the continuing violations doctrine, see Heard v. Sheahan, 253 F.3d 316 (7th Cir. 2001), limits the doctrine's application to defendants who had the authority to provide the requested medical care.  Id. at 317.  Wexford ceased to have any control or say in Ozoroski's care as of September 1, 2003.

Moreover, Ozoroski's grievance history further supports summary judgment in favor of Wexford on statute of limitations grounds.  Ozoroski filed grievances beginning in 2000 alleging that Wexford denied his surgery on the basis of cost.

(See Doc. 103, Ex. D).  On April 8, 2003, the grievances against Wexford, appealed through final review, were denied on the basis that surgery was too risky.  (Id.) With no remaining administrative remedy available, Ozoroski was on notice of his alleged injury.  Hence, the claims against Wexford are barred by the statute of limitations.

Similarly the claims against Dr. Maue and Cerullo are time-barred.  Dr. Maue's involvement in Ozoroski's treatment is limited to the preparation of two letters dated November 10, 2003, and October 20, 2004 (see Doc. 99, Ex. C, D), stating his medical opinion, as Chief of Clinical Services for the DOC, that Ozoroski's medical condition did not necessitate surgery.  The record is devoid of any indication that Dr. Maue had any other contact with Ozoroski.  The two letters amount to little more than discrete, isolated events not appropriately linked to some larger scheme to deny Ozoroski medical care.

Ozoroski's allegations against Cerullo center on a single event: her alleged refusal to permit an application for pre-release on his behalf on October 15, 2004. Ozoroski filed a grievance in connection with this allegation against Cerullo.  (See Doc. 103, Ex. D, at 34).  The grievance was denied on final review on March 4, 2005. Prison authorities concluded that Ozoroski's allegations against staff "have no merit."  (Id. at Ex. D, at 42).  The grievances highlight Ozoroski's recognition of the permanence of his injuries, yet Ozoroski did not file suit against Wexford, Dr. Maue or Cerullo until after the expiration of the two-year statute of limitations.  Those

claims are time-barred.  The discrete conduct of these defendants cannot support application of the continuing violation doctrine.

## 2.  **Deliberate Indifference**

Judge Carlson further concluded that, assuming *arguendo*, the continuing violations doctrine applied to the instant matter, all defendants are entitled to summary judgment on the Eighth Amendment deliberate indifference claim.  (Doc. 162, at 54-67).  Ozoroski contends that Judge Carlson failed to consider numerous documents indicating the need for surgery.  (Doc. 169, at 4).  He argues that the defendants' opinions that surgery was too risky were "excuses" and "unfounded." (Id.)  Finally, Ozoroski reasserts that defendants denied him needed treatment due to the cost of the procedure.  (Id.)

Prison officials violate the Eighth amendment when they exhibit "deliberate indifference to serious medical needs of prisoners."  Estelle v. Gamble, 429 U.S. 97, 104 (1976); see also Monmouth Cnty. Corr. Ins. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).  An inmate's medical need qualifies as serious when it "has been diagnosed by a physician as requiring treatment or . . . is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth Cnty. Corr. Ins. Inmates, 834 F.2d at 347 (citations and internal quotations omitted). The deliberate indifference standard is both subjective and objective: not only must a prison official "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but the prison official "must draw the

10

inference." <u>Woloszyn v. Cnty. of Lawrence</u>, 396 F.3d 314, 321 (3d Cir. 2005) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)).

Misdiagnoses or negligent treatment, the cornerstones of a medical malpractice action, do not amount to Eighth Amendment violations. <u>See</u> <u>Spruill v. Gillis</u>, 372 F.3d 218, 235 (3d Cir. 2004). Doctors will simply not be considered deliberately indifferent to a prisoner's medical needs when they exercise their professional judgment in the diagnosis and treatment of the prisoner. <u>See</u> <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 67 (3d Cir. 1993) (stating that "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners"); <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990) ("Certainly, no claim is presented when a *doctor* disagrees with the professional judgment of another doctor. There may, for example, be several ways to treat an illness."); <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." (citing <u>Youngberg v. Romeo</u>, 457 U.S. 307, 322-23 (1982))). "Mere disagreement as to the proper medical treatment is also insufficient" to establish deliberate indifference. <u>Spruill v. Gillis</u>, 372 F.3d 218, 235 (3d Cir. 2004) (internal citations and quotations omitted).

Prison authorities are deliberately different when they: (1) intentionally refuse to provide needed care; (2) unnecessarily delay needed treatment for non-medical reasons; and (3) prevent an inmate from receiving needed care. <u>Monmouth Cnty. Corr. Inst. Inmates</u>, 834 F.2d at 346. In the instant matter, it is undisputed

11

that doctors treated Ozoroski's medical condition on a continuing and frequent basis, albeit not to Ozoroski's liking. Ozoroski's medical records contain many conflicting medical recommendations. Some doctors recommended surgery; others indicated surgery was unwarranted or presented substantial, unjustifiable risks. Clearly, Ozoroski's treating and consulting physicians had varying views on the treatment method. Faced with these competing medical opinions the defendants were required to exercise their medical judgment and render a professional opinion. The exercise of such professional judgment does not constitute deliberate indifference. See White, 897 F.2d at 110; Brown, 903 F.2d at 278. Nor does Ozoroski's disagreement with the treatment decision render the decision deliberately indifferent or create a material issue of fact. Monmouth Cnty. Corr. Inst. Inmates, 834 F.2d at 346.

Further, Ozoroski's care was not impeded when released to Gaudenzia. There was some dispute when Ozoroski failed to comply with procedures to obtain leave passes for his medical appointments, but Ozoroski continued to attend multiple appointments, ultimately culminating in his surgery in October 2007. The record does not establish a material factual dispute on deliberate indifference as to the individual defendants.

To establish Eighth Amendment liability against Wexford and PHS—private corporations—Ozoroski must establish that he suffered a constitutional deprivation as a result of an official corporate policy or custom. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). Ozoroski contends that Wexford and

PHS based treatment decisions on cost.  He submits a peer review article, copies of

Wexford's website pages, which discuss Wexford's goal to provide cost-effective

healthcare services to its clients, an online newspaper article noting that Wexford

terminated its contract due to soaring costs, and a 2008 PHS white paper discussing

rising costs of providing healthcare services to correctional facilities.  (Doc. 168, Ex.

D, E).  Judge Carlson deemed these documents hearsay and, accordingly, declined

to rely on them in his summary judgment analysis.  (Doc. 162, at 63-65).

Nonetheless, he noted that the evidence, even if admitted, and taken in

combination with the deposition testimony of representatives for Wexford and PHS,

provides no basis to conclude the corporations had a policy or custom of placing

cost decisions over appropriate treatment.  (Id.)  Ozoroski objects, claiming the

documents fall within exceptions to the hearsay rule in that they state the proper

treatment and time for treatment of Ozoroski's medical condition or on the grounds

that they are business records.  (Doc. 168 ¶ 10).  The court agrees with Judge

Carlson.

Evidence, which is not admissible at trial, may not be considered in ruling on

a motion for summary judgment.  See Smith v. City of Allentown, 589 F.3d 684, 693

(3d Cir. 2008); Countryside Oil Co., Inc. V. Travelers Ins. Co., 928 F. Supp. 474, 482

(D.N.J. 1995).  Thus, a hearsay statement may be considered on summary judgment

only if it may be admissible at trial.  Shelton v. Univ. of Med. & Dentistry of N.J.,

223 F.3d 220, 223, n.2 (3d Cir. 2000).  The court can identify no hearsay exception for

the peer review article and article on the treatment of enterocutaneous fistula.  Nor

can the court glean how they are relevant to establishing a custom or practice of placing cost decisions over appropriate treatment decisions.  Similarly, the remaining documents, even if admissible, do not create a material issue of fact as to Wexford or PHS.  General statements regarding the delivery of cost-effective healthcare or the escalating costs of correctional facility healthcare contracts (especially when made subsequent to the actions giving rise to this cause of action, such as the 2008 PHS whitepaper) utterly fail to create a question of policy or custom.  The discussion of health care costs by businesses in the healthcare industry, simply do not, without more, establish policy or practice of placing expense considerations over considerations of appropriate medical care.  Ozoroski's objections are without merit.

### B.    Defendants' Objection - The Retaliation Claim

The objections filed by defendants all relate to the same issue: Ozoroski's First Amendment retaliation claim asserted in Count IV of his third amended complaint.  (Doc. 68, at 33-34).  In the report and recommendation Judge Carlson concluded that the record is devoid of evidence to support Ozoroski's claim that defendants denied his requests for surgery in retaliation for his filing grievances. He recommended that the court grant summary judgment in PHS's favor on the retaliation claim, but did not make a recommendation as to the remaining defendants.  (Id. at 69-70).  Judge Carlson addressed the retaliation claim against the other defendants in a footnote, stating:

14

>With the exception of Defendant PHS, no party has addressed Ozoroski's retaliation claim, and we suspect that this reflects an oversight since the discovery taken in this case clearly focused almost exclusively on Ozoroski's deliberate indifference claims.  We have difficulty fining that Plaintiff's retaliation claims against all Defendants could conceivably survive summary judgment, because his claims of retaliation appear to be predicated on the same conduct that he unpersuasively claimed constituted deliberate indifference.  Furthermore, we have identified no evidence in the voluminous record to support Plaintiff's theory that every named Defendant in this case retaliated against him by denying him adequate medical care after he filed grievances.  Nevertheless, out of an abundance of caution, we are hesitant to recommend that the Court enter summary judgment in all Defendants' favor on Count IV, and instead believe that the parties should be alerted to the absence of argument on this final claim.

(Id. at 70 n.10).  Defendants Velasquez and Cantey object to this suggestion, asserting that this court previously dismissed the retaliation count against them in the court's memorandum and order dated July 10, 2009.  (Doc. 163 ¶¶ 6-7).  Dr. Edelman objects to this suggestion on the ground that he filed a joint motion for summary judgment with PHS and, therefore, just as PHS addressed the retaliation claim, so too did he.  (Doc. 165 ¶ 6).  Finally, Wexford asserts that Judge Carlson did not actually recommend either way whether the court should grant summary judgment to defendants (except PHS) on the retaliation claim, but offers that Judge Carlson's report "more than sufficiently establishes a sound basis for the Court to conclude that Plaintiff's retaliation claims are without merit, and should not survive the motions for summary judgment."  (Doc. 167, at 2).

### 1.    Defendants Velasquez and Cantey

In the court's memorandum and order (Doc. 63) dated February 18, 2009, the court granted Ozoroski leave to file a third amended complaint but admonished

him to allege facts sufficient to state a plausible right to relief for First Amendment
retaliation against Velasquez and Cantey, or have the claim dismissed with
prejudice. Ozoroski filed a third amended complaint but failed to comply with the
court's order. Accordingly, in a memorandum dated July 10, 2009 (Doc. 77), the
court concluded that the First Amendment retaliation claim against Velasquez and
Cantey "will be dismissed with prejudice as it pertains to these defendants." (Id. at
7 n.2). Unfortunately, the accompanying order did not specifically note this
dismissal. Given the voluminous record before the court and the lack of an explicit
reference in the court's order to the dismissal of the claim against Velasquez and
Cantey, the minor oversight of the dismissal language by the able Judge Carlson is
certainly understandable. The court will sustain the objection of Velasquez and
Cantey to the report and recommendation and grant their summary judgment
motion on the only claim remaining against them subsequent to the July 10, 2009
memorandum and order.

### 2.   **Defendant Dr. Edelman**

Dr. Edelman asserts that his joint motion for summary judgment filed with
PHS addresses Ozoroski's retaliation claim. Upon review of the summary judgment
motion and supporting brief (Docs. 101, 106), it is clear that Dr. Edelman, along with
PHS did indeed seek summary judgment on the retaliation claim. The reasons set
forth by Judge Carlson in his recommendation that the court grant summary
judgment to PHS on the retaliation claim are equally applicable to Dr. Edelman.

16

The court will sustain his objection and grant Dr. Edelman and PHS's summary judgment motion on all claims.

### 3.    **Defendant Wexford**

Wexford's brief in support of its motion for summary judgment did address Ozoroski's retaliation claim.  (See Doc. 114, at 27-28).  Wexford asserted that its denials of Ozoroski's surgery request occurred in 1999, prior to Ozoroski's first grievance on August 7, 2000.  (Id. at 28).  Alternatively, Wexford contended that the retaliation claim was time-barred by the applicable statute of limitations because Wexford ceased to have control over Ozoroski's health care upon the termination of its contract on September 1, 2003.  (Id.)  Ozoroski opposed Wexford's motion for summary judgment on the retaliation claim but failed to cite any evidence in the record in support.  (Doc. 115, at 16).  He merely stated that he filed grievances beginning in 2000 through 2007.  As discussed supra, the court finds Ozoroski's claims against Wexford time-barred.  Assuming *arguendo* the retaliation claim is not precluded by the statute of limitations, Ozoroski's non-specific assertion that he filed grievances from 2000 through 2007 in no way establishes that Wexford denied medical care on the basis of such grievances.

### 4.    **Defendants Dr. Maue and Cerullo**

Dr. Maue and Cerullo did not address the retaliation claim in their motion for summary judgment or supporting brief.  (See Docs. 98, 111).  The claim is clearly still active against them as this court denied their motion to dismiss the First Amendment claim in its Memorandum and Order dated February 18, 2009, (Doc. 63,

at 30 ¶ 2.b.), and Ozoroski continued to assert the claim in his third amended complaint.  (Doc. 68, at 33-34).  However, Dr. Maue and Cerullo did not file objections to Judge Carlson's report.  Nonetheless, the court will grant summary judgment to Dr. Maue and Cerullo on all claims, including the First Amendment retaliation claim.  The court concluded above that the claims against Dr. Maue and Cerullo, including the First Amendment retaliation claim, are barred by the statute of limitations.

Even in absence of the statute of limitations bar, the court would grant summary judgment on the retaliation claim *sua sponte*.  The Supreme Court recognizes "that district courts . . . possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986); <u>see also</u> <u>Gibson v. Mayor & Council of Wilmington</u>, 355 F.3d 215, 222 (3d Cir. 2004); <u>Chambers Dev. Co. v. Passaic Cnty. Utils. Auth.</u>, 62 F.3d 582, 584 n.5 (3d Cir. 1995).  Before a district court grants summary judgment to a non-moving party it must first place the adversarial party on notice that the court is considering such *sua sponte* action.  <u>See</u> <u>Gibson</u>, 355 F.3d at 222.  The Third Circuit explained that notice means "that the targeted party 'had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward.'"  <u>Id.</u> at 223 (quoting <u>Leyva v. On the Beach, Inc.</u>, 171 F.3d 717, 720 (1st Cir. 1999) and <u>Jardines Bacata, Ltd. v. Diaz-Marquez</u>, 878 F.2d 1555, 1561 (1st Cir. 1989)) (quotations

omitted).  Additionally,

> [w]here it appears clearly upon the record that all of the evidentiary
> materials that a party might submit in response to a motion for
> summary judgment are before the court, a *sua sponte* grant of
> summary judgment against that party may be appropriate if those
> materials show no material dispute of fact exists and that the other
> party is entitled to judgment as a matter of law.

Id. at 224 (quoting Ramsey v. Coughlin, 94 F.3d 71, 74 (2d Cir. 1996)).  Despite the

general notice requirement to the nonmoving party, the Third Circuit has

concluded that, notice to the adversarial party is not required in three

circumstances: (1) when there exists a fully developed record; (2) when the

adversarial party would not be prejudiced by a *sua sponte* grant of summary

judgment; and (3) when the decision is based on a purely legal issue.  Id.[3]

Although a district court's *sua sponte* grant of summary judgment must be

undertaken with the utmost caution given the serious consequences to the

adversarial party, in this instance such action is appropriate.  Three of the seven

defendants moved for summary judgment on the retaliation claim (to which

Ozoroski responded in his opposition briefs), and the retaliation claim was no

longer pending against two of the remaining four defendants who did not address

the claim.  Ozoroski was on fair notice that the court would consider summary

---

[3]  The court in Gibson found all three circumstances present in upholding the
district court's *sua sponte* grant of summary judgment.  Gibson, 355 F.3d at 224.
The court declined to address whether the presence of some, but not all three
circumstances would be sufficient to except the court from the notice requirement.
Id.; see also DL Resources, Inc. v. FirstEnergy Solutions Corp., 506 F.3d 209, 224
n.14 (3d Cir. 2007) (again declining to address the question).

judgment in favor of defendants on that claim, especially considering Dr. Maue and Cerullo's statute of limitations argument in support of summary judgment. Additionally, and more importantly, the voluminous record before the court is fully developed. All evidence Ozoroski could potentially proffer in support of his retaliation claim is in the record presently before the court. Finally, defendants' objections, all of which were filed prior to Ozoroski's objections, addressed the retaliation claim, yet Ozoroski did not object to Judge Carlson's conclusion on the retaliation claim against PHS or file opposition to defendants' objections.

The record simply does not reflect retaliatory actions by Dr. Maue or Cerullo, both of whom had limited roles in Ozoroski's medical care. Ozoroski filed grievances, but the record fails to establish a causal connection between those grievances and the denial of Ozoroski's requests for surgery or early release. The denial of surgery was based on the professional medical judgment of doctors that the surgery was too risky to undertake, and Ozoroski's request for early release was denied as premature, not out of retaliation. Summary judgment in favor of Dr Maue and Cerullo is warranted on the retaliation claim.

## IV.    **Conclusion**

For the foregoing reasons, the court will adopt in part and reject in part the report and recommendation (Doc. 162). The court will grant defendants' motions for summary judgment on all claims.

An appropriate order is attached.

  S/ Christopher C. Conner    
CHRISTOPHER C. CONNER
United States District Judge

Dated:      March 31, 2011

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STANLEY N. OZOROSKI,** | : | **Civil Action No. 1:08-CV-0082** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DR. FREDERICK R. MAUE, Chief of** | : | |
| **Clinical Services, WEXFORD** | : | |
| **HEALTH SOURCES, INC., PRISON** | : | |
| **HEALTH SERVICES, DR. ADAM A.** | : | |
| **EDELMAN, MARVA CERULLO,** | : | |
| **Health Care Administrator for S.C.I.** | : | |
| **Mahanoy, CECLIA VELASQUEZ,** | : | |
| **Director of Guardenzia DRC, and** | : | |
| **CHERYL CANTEY, Head Medical** | : | |
| **Supervisor of Guadenzia DRC,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 31st day of March, 2011, upon consideration of the report

(Doc. 162) of the magistrate judge wherein the magistrate judge recommends that

defendants' motions (Docs. 92, 98, 100, 101) for summary judgment be granted and

plaintiff's motion (Doc. 146) to quash the expert report of defendants Prison Health

Services and Dr. Adam Edelman be denied as moot, and upon further consideration

of the of the objections (Doc. 168) filed by plaintiff, and the objections filed by

defendants Cecilia Velasquez, Cheryl Cantey (Doc. 163), Dr. Adam Edelman (Doc.

165), and Wexford Health Sources, Inc. (Doc. 167), and for the reasons stated in the

accompanying memorandum, it is hereby ORDERED that:

1.     The report of the magistrate judge (Doc. 162) is ADOPTED in part, and
       REJECTED in part as follows:

      a.      REJECTED with respect to its assertion that no defendant other than Prison Health Services addressed plaintiff's retaliation claim.

      b.      ADOPTED in all other respects.

2.     Defendants' motions (Docs. 92, 98, 100, 101) for summary judgment are GRANTED.

3.     Plaintiff's motion (Doc. 146) to quash the expert report of defendants Prison Health Services and Dr. Adam Edelman is DENIED as MOOT.

4.     The Clerk of Court is directed to enter JUDGMENT in favor of defendants and to CLOSE the case.


                            S/ Christopher C. Conner
                            CHRISTOPHER C. CONNER
                            United States District Judge